**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Howard R. Tallman**

| | |
|---|---|
| In re: ) | |
| ) | |
| **KWANZA B. STEVENS and** ) | |
| **MINDY M. STEVENS,** ) | |
| **Debtors.** ) | |
| ) | |
| **JEFFREY A. WEINMAN, TRUSTEE,** ) | **Case No. 15-11776 HRT** |
| ) | **Chapter 7** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Adversary No. 15-01340** |
| **ALTERNATIVE REVENUE SYSTEMS,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This case comes before the Court on the Motion for Summary Judgment filed by Defendant Alternative Revenue Systems, Inc. ("ARS"), on September 24, 2015 (docket #6), the Response thereto filed by Jeffrey A. Weinman, Chapter 7 Trustee ("Trustee") (docket #7), as well as the Cross Motion for Summary Judgment filed by Trustee on October 7, 2015 (docket #8), the Response and Reply in Support filed by ARS (dockets #10 and #11), and the Reply in Support filed by Trustee (docket #12). The Court has reviewed the pleadings and the record and is now ready to rule.

I. Background

Debtors filed their petition under Chapter 7 of the Bankruptcy Code on February 26, 2015, and received their discharge on June 1, 2015. Trustee filed a complaint against ARS on August 26, 2015, alleging claims for avoidance, preservation, turnover, and disallowance under 11 U.S.C. §§ 547, 551, 542, 543, and 502.[1] Prior to the bankruptcy filing, ARS obtained a judgment against Debtor Mindy Stevens in Denver County Court, and served a writ of continuing garnishment on her employer on or about October 18, 2014. Trustee alleges the wage garnishments ARS received between November 30, 2014, and January 12, 2015 (in the 90 days prior to the petition date), in the total amount of $1,294.16, are avoidable transfers under §

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

547(b).  ARS argues the relevant transfer took place on the date the writ of garnishment was served, before the 90-day preference period, rather than with each paycheck garnished.  In their motions for summary judgment, both parties generally agreed the facts were not in dispute, but now ARS, in its Response/Reply (dockets #10 and #11), argues, for the first time, a factual dispute as to the date the wages were earned versus the date they were paid.

II. Discussion

　　Summary judgment is appropriate when the materials submitted to the court demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989); *National Dev. Servs., Inc. v. Denbleyker (In re Denbleyker)*, 251 B.R. 891, 894 (Bankr. D. Colo. 2000). *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). What facts are material depends upon the substantive law applied. *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d at 565. Disputes about immaterial facts will not preclude summary judgment. *Id.*

　　To prove a claim under § 547(b), the Trustee must prove all of the following elements:

　　(1) the debtor transferred an interest in property,
　　(2) to or for the benefit of a creditor,
　　(3) for or on account of an antecedent debt owed by the debtor before such transfer was made,
　　(4) made while the debtor was insolvent,
　　(5) made on or within 90 days before the date of the filing of the petition, or within one year of the filing of the petition if such creditor is an insider, and
　　(6) that enables such creditor to receive more than the creditor would receive in a case under Chapter 7 of the Bankruptcy Code.

*In re M&L Business Mach. Co., Inc.*, 155 B.R. 531, 534 (Bankr. D. Colo. 1993).

　　In the answer to the Trustee's complaint, ARS admitted elements (1) through (4) but denied elements (5) and (6).  Thus, only elements (5) and (6) are in dispute.

　　A. Was the transfer made on or within 90 days before the date of filing the petition?

　　The parties disagree as to when the relevant transfer in this case was made.  ARS bases its three-page motion for summary judgment on two cases:  *Hopkins v. Suntrust Mortgage, Inc. (In re Ellis)*, 441 B.R. 656 (Bankr. D. Idaho 2010), and *Straight v. First Interstate Bank (In re Straight)*, 207 B.R. 217 (BAP 10th Cir. 1997).  In *Ellis*, the Idaho bankruptcy court observed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") modified the

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

definition of "transfer" in Section 101(54)[2] by replacing the word "every" in that definition with "each," and supplementing the definition to include "the creation of a lien." The *Ellis* court concluded the modification was intended to give "expression to a widely held understanding . . . [that] a transfer includes the creation of a lien." *Id.* at 661-62.

ARS also notes that in *Straight*, the court held payments made during the preference period, pursuant to a garnishment or attachment obtained prior to the preference period, were transfers, "but they were not avoidable as preferences because they did not enable the creditors to receive more than they would have without them if the debtor were liquidated in chapter 7. The earlier garnishments or attachments were the transfers accomplishing that for the creditors." *In re Straight,* 207 B.R. at 226 (citations omitted). Therefore, in its motion for summary judgment, ARS contends the relevant transfer occurred in this case upon the creation of the garnishment lien, more than 90 days pre-petition. ARS agrees the garnishments made with each paycheck within the 90 days pre-petition are transfers, but argues they are not avoidable transfers under the reasoning of the *Straight* decision.

In his cross- motion for summary judgment, Trustee cites several wage garnishment cases holding an avoidable preference occurs each time a creditor garnishes a paycheck within the 90 days pre-petition, regardless of when the garnishment writ was served. The Trustee also relies on the language of § 547(e), which provides: "[f]or purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." Thus, the Trustee argues, a transfer (for purposes of § 547)[3] is not made until the debtor has acquired rights in the property transferred, which does not occur until wages are earned. In support, Trustee cites *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934); *In re White*, 258 B.R. 129 (Bankr. D. N.J. 2001); *In re Chavez*, 257 B.R. 341 (Bankr. D. N.M. 2001); and *In re Castleton*, 84 B.R. 743 (Bankr. D. Colo. 1988).

At the outset, the Court notes that *In re Ellis*, cited by ARS, is not a wage garnishment case. *Ellis* involved the debtors' voluntary creation of a post-petition lien by refinancing their mortgage. The *Ellis* court had to determine whether that act was a transfer under § 549, and, in examining the language of both § 101(54) and § 549, found it was an avoidable transfer. Based on *Ellis,* ARS argues the "definitional expansion" of transfer to specifically include a lien

───────────────

[2]  Section 101(54) currently provides:  The term "transfer" means--(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--(i) property; or (ii) an interest in property.

[3]  Trustee states he "does not dispute that the imposition of the garnishment lien was a transfer" and one that occurred outside the 90 days pre-petition.  (docket #8, page 6).

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

"renders unnecessary a resort to state law for a determination as to whether and when a garnishment comprises a transfer for purposes of § 547."

The Court finds *Ellis* to be unpersuasive, however, because the Trustee is not resorting to state law to determine whether and when the garnishment comprises a transfer. Both the Trustee and ARS agree that "whether a transfer has occurred is a matter of federal law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). The Trustee argues the Bankruptcy Code itself defines when a transfer relevant to § 547 occurs, in § 547(e): once the debtor has acquired rights in the property transferred. The fact that § 101(54) now specifically includes the creation of a lien as a transfer does not mean that the plain language of § 547(e) no longer applies.

The Trustee agrees with ARS that service of the garnishment, outside the preference period, was a transfer as defined in § 101(54), but because that transfer occurred outside of the 90-day preference period, the Trustee argues § 547(b) is inapplicable to that transfer. The Trustee contends further transfers were made under § 547(b) each time Debtor's wages were garnished and paid to ARS within the preference period.

The Court observes that the dispute between the parties illustrates some ambiguity in the post-BAPCPA definition of "transfer" under § 101(54), especially when compared to the language of § 547(e). Because the service of the garnishment, in this case, was outside the 90-day pre-petition period, the Court need not decide whether the parties are correct when they both assume the service of the garnishment itself was a transfer as defined in § 101(54). In that section, a "transfer" is defined, in part, as "the creation of a lien." ARS cites Colo. Rev. Stat. § 13-54.5-102 for the proposition that a continuing wage garnishment creates a lien. That section provides, in part:

§ 13-54.5-102. Continuing garnishment – *creation of lien*

> (1) In addition to garnishment proceedings otherwise available under the laws of this state in any case in which a money judgment is obtained in a court of competent jurisdiction, the judgment creditor or its assignees shall be entitled, on notice to the judgment debtor required by section 13-54.5-105, to apply to the clerk of such court for garnishment against any garnishee. *To the extent that the earnings are not exempt from garnishment, such garnishment shall be a lien* and continuing levy upon the earnings due or to become due from the garnishee to the judgment debtor.

(Emphasis added).

Under the language of the Colorado statute, service of the garnishment creates a lien under state law. Nevertheless, service of a continuing garnishment, in and of itself, creates no lien for purposes of § 101(54). Service of the garnishment creates an inchoate lien[4] in future earnings that does not ripen until the earnings come into existence. *See Local Loan Co. v. Hunt,* 292 U.S. at 243 ("The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence"); *Ute Mesa Lot 1, LLC, v. First Citizens Bank & Trust Co. (In re Ute Mesa),* 736 F.3d 947 (10th Cir. 2013) (holding a notice of *lis pendens* was not a creation of a lien for purposes of § 101(54) because it did not constitute a transfer of interest in the debtor in property).

Despite that observation, the Court in this particular case need only determine whether the transfers occurring within the 90 days pre-petition meet the definition of § 101(54), not whether service of the initial garnishment meets that definition. Putting the language regarding "creation of a lien" aside, the Court must decide whether the remaining portion of § 101 (54) was met each time ARS garnished her paycheck. In other words, was each paycheck garnishment a "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--(i) property; or (ii) an interest in property." The Court decides this question in the affirmative. With each paycheck garnished, a portion of Ms. Stevens' property was parted with; that is, the wages she had earned. Thus, the Court finds the garnishing of each paycheck to be a transfer as defined in § 101(54).

B. Did the transfer enable a creditor to receive more than the creditor would receive in a case under Chapter 7 of the Bankruptcy Code?

ARS cites *In re Straight* for the proposition that payments pursuant to a garnishment lien were not avoidable because they did not allow the creditor to receive more than it would in a Chapter 7 liquidation. The Court has carefully reviewed the *Straight* decision and determines it is not factually on point. In that case, pursuant to a pre-petition stipulation, a bank received a payment from a state court registry in the 90 days pre-petition to satisfy a default judgment obtained against Debtors in state court. Debtors[5] commenced an adversary proceeding to avoid the payment to the bank as a preference under § 547(b). The court held the payment was

---

[4] "An inchoate interest . . . is not a present interest, but one which may ripen into a vested estate, if it is not barred, extinguished, or divested." *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.,* 831 P.2d 908, 911 (Colo. Ct. App. 1991) (citing *Black's Law Dictionary* 762 (6th ed. 1990).

[5] Debtors initially filed for Chapter 13, but their case was converted to one under Chapter 7, and a Chapter 7 Trustee was appointed who was joined as a party to the appeal.

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

avoidable. In reaching its decision, the court reviewed cases cited by the bank, which the court noted "were of no help" to the bank. *In re Straight*, 207 B.R. at 226.   Importantly, those cases did not involve wage garnishments.  Instead, they involved a payment made out of a bank account, trust account, or other property *already owned* by the debtor.  *See In re Battery One-Stop*, 36 F.3d 493 (6th Cir. 1994) (garnishment on bank account); *In re Wind Power Systems*, 841 F.2d 288 (9th Cir. 1988) (attachment lien on debtor's assets); *In re Latham*, 823 F.2d 108 (5th Cir. 1987)(same); *In re Conner*, 733 F.2d 1560 (11th Cir. 1984) (garnishment attached to funds already turned over to state court); *In re Carlson*, 177 B.R. 645 (Bankr. D. Neb. 1995)(lien on real property); *In re Aspen Data Graphics*, 109 B.R. 677 (Bankr. E.D. Pa. 1990) (garnishment on bank account).

The statement the *Straight* court made regarding garnishments in those cases not being avoidable would be correct in the context of property or a bank account in existence at the time the garnishment was served.  In that case, when the garnishment is served, the judgment lien attaches -- and a transfer occurs -- immediately because the judgment debtor has present rights in the property.  But that situation is distinct from a continuing wage garnishment served prior to an employee obtaining rights in the property by earning wages.

Even if the statement in *Straight* is given some weight as dicta, the majority of subsequent wage garnishment cases hold that, regardless of when the garnishment writ was served, each garnished paycheck in the 90-day pre-petition period is an avoidable transfer under § 547(b).  Most recently, in *Tower Credit, Inc v. Schott*, 2016 WL 1175150 at *5 (D. M.D. La. 2016), a wage garnishment case, the court held as follows:

> Factually and logically, an employee has no right to salary until it is earned, and he or she thus does not "acquire[ ] rights" within the meaning of this subsection until that precise moment in time . . . . [T]he vast majority of cases hold that wages received by a creditor . . . during the preference period pursuant to an older order of garnishment are "transfers" within the preference period under § 547(b) and pursuant to § 547(e)(3).

*Id.* (internal citations omitted).

*Accord, In re Morehead*, 249 F.3d 445 (6th Cir. 2001) ("To the extent the debtor chooses to work for the garnishee employer, any earnings during the 90-day preference period . . . that are transferred to the creditor pursuant to a garnishment order are avoidable as a preferential transfer, regardless of the date of perfection of the garnishment order."); *In re Fairweather*, 515 B.R. 208 (Bankr. D. Md. 2014) (transfer occurred on date commissions were earned by debtor and payable by garnishment to creditor during the preference period);  *In re Chavez*, 257 B.R. 341, 343 (Bankr. D. N.M. 2001)("in the case of wage garnishments, transfers can occur only as

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

the wages are earned."); *In re Johnson*, 239 B.R. 416, 417-18 (Bankr. M.D. Ala. 1999) ("Subsection 547(e)(3) reads: '[f]or the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.' We cannot imagine a clearer statement of a point of Federal law."); *In re Price*, 272 B.R. 828 (Bankr. W.D. N.Y. 2002) (transfer could only occur when the debtor acquired a right to his wages); *In re White*, 258 B.R. 129 (Bankr. D. N.J. 2001) (Debtor did not acquire right to wages until earning them, thus no transfer occurred until wages were earned); *Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815 (8th Cir. BAP 1998) ("where wages are involved, no transfer occurs until wages are earned."). The Court agrees with the reasoning of these cases.

The Court acknowledges a minority of cases holding to the contrary. *See In re Conner*, 733 F.2d 1560 (11th Cir. 1984); *In re Coppie*, 728 F.2d 951 (7th Cir. 1984); *In re Riddervold*, 647 F.2d 343 (2d Cir. 1981). However, those cases are over 30 years old and have since received a good deal of criticism. *See* Matthew Frankle*, Note: Wage Garnishments in Bankruptcy: Riddervold Revisited*, 21 *Cardozo L. Rev.* 927 (Dec. 1999) (noting the minority view, but arguing that federal bankruptcy law does not recognize a debtor's right to future wages as a property right; thus, transfers cannot occur until a debtor earns the wages); *In re Taylor*, 151 B.R. 772 (Bankr. N.D. Miss. 1993) (noting "the reasoning of these three circuit decisions has been questioned," citing 4 *Collier on Bankruptcy*, Para. 547.16[7] (15th Ed. 1992)).[6] The Court does not find these cases persuasive, especially given the clarifications to Code language by BAPCPA.

Therefore, the Court will follow the majority rule and hold that, regardless of when the garnishment writ was issued and served, each time Ms. Stevens' paycheck was garnished in the 90 days pre-petition, a transfer occurred which enabled ARS to receive more than it would have under Chapter 7 of the Bankruptcy Code.

C. What portion of the transfers occurred in the 90 days pre-petition?

As a final matter, ARS, after moving for summary judgment on the basis that no material facts were in dispute, alleges, for the first time in its Reply/Response (dockets #10 and #11) that summary judgment would be inappropriate because it is unclear when a portion of the wages were actually earned, and suggests some earnings may have occurred a few days prior to the 90-day pre-petition period. The Court acknowledges that many of the wage garnishment cases cited earlier in this opinion conflate the distinction between when wages are earned versus when they are paid for purposes of the 90-day period. However, from the language of the Colorado garnishment statute, ARS's garnishment lien only arose when the wages were earned. COLO.

---

[6] In the *Taylor* case, the court cites nineteen cases following the majority rule that transfers occur at the time wages are withheld. *Taylor*, 151 B.R. at 777.

*Adv. Pro. No. 15-1340 HRT, Order on Cross Motions for*
*Summary Judgment*

REV. STAT. § 13-54.5-102(1).  Section 13-54.5-102(1) provides: "[t]o the extent that the earnings are not exempt from garnishment, such garnishment shall be a lien and continuing levy upon the *earnings due or to become due from the garnishee to the judgment debtor*.").  *Id.* (emphasis added).  At the time its garnishment summons was served, ARS perfected a garnishment lien against whatever wages were due and owing at that time.  By virtue of its continuing levy, its lien attaches to future wages as they are earned.  Its lien on future wages, however, can arise no sooner than when the wages are earned because, until that time, an employee possesses no property rights to which the lien may attach.

Thus, wages earned outside of the 90 days prior to the petition date are protected by ARS's garnishment lien.  Those funds are not subject to the Trustee's avoidance powers regardless of the fact that they were actually paid over to ARS during that 90 day period.  By the same token, with respect to wages earned on or after the 90th day pre-petition, ARS's garnishment lien did not attach to those wages until they were earned.  As a consequence, any payment to ARS based upon those wages is subject to avoidance by the Trustee.

The unresolved fact issue of when the wages were earned precludes summary judgment. The evidence before the Court does not allow it to determine what portion of the $1,294.16 paid over to ARS during the 90 day avoidance period represents wages earned outside of the 90 day period that are protected by ARS's garnishment lien.  However, the Court doubts the parties require the Court's assistance to make that calculation.

For all the foregoing reasons, it is HEREBY ORDERED that the Motion of ARS for Summary Judgment is DENIED, and the Trustee's Cross-Motion for Summary Judgment is DENIED.

It is FURTHER ORDERED the parties shall have twenty-one days from the date of this Order to make the calculation described herein and submit a stipulation resolving the adversary proceeding; or failing which, file a status report requesting that the Court set the matter for an abbreviated trial.

Dated this  23rd  day of May, 2016.

**BY THE COURT:**

Howard R. Tallman, Judge
United States Bankruptcy Court